IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| QUIRINO HERNANDEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 5:19-00352 |
| | ) |
| D.L. YOUNG, Warden, | ) |
| | ) |
| Defendant. | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Plaintiff's Complaint/Motion filed on May 6, 2019. (Document No. 1.) Having examined Plaintiff's Complaint/Motion, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that this matter be dismissed.

**FACTUAL BACKGROUND**

On May 6, 2019, the Court filed what it construes as a letter-form Complaint/Motion claiming seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq*. and Memorandum in Support.[1] (Document Nos. 1 and 2.). Plaintiff names Warden D.L. Young as the sole Defendant. (Id.) Plaintiff alleges that the commissary is going to eliminate the sale of AA, AAA, and C batteries effective June 7, 2019. (Id.) Therefore, Plaintiff complains that Defendant's policy of eliminating batteries will render inmates' AM/FM radios, night lights, clocks, and beard trimmers obsolete and ineffective. (Id.) Plaintiff further notes that

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

the AM/FM radios, night lights, clocks, and beard trimmers were prior purchases from the commissary. (Id.) Plaintiff contends that inmates will be effectively deprived of their above personal property due to Defendant's policy. (Id.) Plaintiff states that an AM/FM radio is "an indispensable item and essential for viewing various television programs, watching and listening to local and world news, sporting events, and weather predications." (Id.) Plaintiff complains that he, and other inmates, will be irreparably harmed because inmates will be required to expend "sorely needed funds" for the purchase of a new wind-up AM/FM radio instead of using those funds for the purchase of stamps "to maintain close and personal relationship with immediate family members, relative, loved ones, the court, and to purchase personal hygiene items." (Id.) As relief, Plaintiff requests "a combined temporary restraining order and a preliminary injunction to ensure that batteries necessary for the normal operation of all AM/FM radios, night lights, clocks, and beard trimmers are not eliminated, removed or discontinued from being sold to inmates incarcerated at [FCI Beckley]." (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of a "Memorandum for Inmate Population" dated April 5, 2019, from AWO P. Boulet stating that "[f]or environmental and safety concerns, effective Friday, June 7, 2019, the FCI Beckley Commissary will discontinue the sale of AA, AAA, and C batteries. Items that require batteries will be removed from the Commissary inventory and will be replaced with items that either do not require a battery or require only a watch type battery" (Document Nos. 1-1 and 2-1.); and (2) A copy of a commissary form noting that "batteries are sold on an exchange basis only and must be turned in at the beginning of your sale" (Document Nos. 1-2 and 2-2.).

The Docket Sheet reveals that Clerk's Office mailed to Plaintiff on May 6, 2019, a blank Application to Proceed Without Prepayment of Fees and Costs. Plaintiff, however, has neither

filed a completed Application to Proceed Without Prepayment of Fees and Costs, nor paid the Court's filing fee and administrative fee totaling $400.00.

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL

2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

**1.     FTCA claim:**

Plaintiff appears to assert a negligence claim under the Federal Tort Claims Act against Federal Bureau of Prisons. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th

Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. Section 2680, however, exempts from the waiver certain categories of claims. See 28 U.S.C. §§ 2680(a)-(n). Section 2680(c) provides that the waiver of immunity in Section 1346(b) shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." In Ali v. Federal Bureau of Prisons, 552 U.S. 214, 228, 128 S.Ct. 831, 841, 169 L.Ed.2d 680 (2008), the United States Supreme Court held that "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers." Ali v. Federal Bureau of Prisons, 552 U.S. 214, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008). Thus, FTCA actions involving the detention or mishandling of personal property by prison officials are subject to dismissal. See Perkins v. Deboo, 2009 WL 1650443 (N.D.W.Va. June 11, 2009)(plaintiff's FTCA claim seeking reimbursement for loss of personal property dismissed based upon Section 2680(c)); Mathis v. U.S., 2008 WL 2922798 (D.S.C. July 24, 2008)(plaintiff's FTCA claim that prison officials were negligent in transferring his personal property was dismissed based upon Section 2680(c)); Wadley v. Warden, 2008 WL 2455445 (W.D.Va. June 16, 2008)(FTCA claim that prison officials were negligent in seizing and destroying his tennis shoes was dismissed based upon Section 2680(c)). The undersigned finds that Plaintiff's claim that Defendant has effectively deprived him of his personal property that requires AA, AAA, and C batteries, falls squarely within the "detention exception" as set forth in Section 2680(c). Accordingly, Plaintiff's FTCA claim must be dismissed.

**2.    Bivens claim:**

The undersigned notes that Plaintiff fails to allege a constitutional violation in his Complaint/Motion. To the extent Plaintiff may be attempting to allege a violation of his constitutional rights pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the undersigned will briefly address the merits of his claim.

First, Plaintiff acknowledges in his he failed to fully exhaust his administrative remedies prior to initiating the above action. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when

---

[2] 42 U.S.C. § 1997e(a) provides as follows:
>    No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'"); also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal

v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra;  Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of

8

pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must

complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint/Motion, Plaintiff acknowledges that he did not fully exhaust his available administrative remedies. (Document No. 1, p. 2.) Plaintiff states that he "submitted an Informal Resolution to F.C.I. Beckley staff on April 30, 2019," which was just six days prior to filing the above action (May 6, 2019). Thus, it is apparent from the face of the Complaint/Motion that Plaintiff failed to fully exhaust his administrative remedies prior to filing his

Complaint/Motion. See Custis, 851 F.3d. at 361; Banks, 694 Fed. Appx. at 160. To the extent Plaintiff requests that this action be stayed pending exhaustion, Plaintiff's request should be denied. As stated above, PLRA requires that inmates exhaust available administrative remedies *prior* to filing civil actions. Accordingly, the Court may not stay the above action pending exhaustion. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)("a prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending."); Freeman, 196 F.3d at 645("The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Brown v. Zeigler, 2013 WL 4500473, * 10 (S.D.W.Va. Aug. 20, 2013)(J. Berger)("Because exhaustion is a prerequisite of filing suit, administrative remedies must be exhausted *before* filing a complaint in federal court, not after or contemporaneous therewith.")(emphasis in original). Finally, there is no indication or allegation by Plaintiff that the administrative remedy process was unavailable. The undersigned, therefore, respectfully recommends that Plaintiff's Complaint/Motion be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA. Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider the merits of his claim.

Liberally construing Plaintiff's Complaint/Motion as asserting a constitutional claim, the undersigned finds his claim is without merit. Plaintiff appears to argue that Defendant is effectively depriving him of his personal property because the commissary is discontinuing the sale of AA, AAA, and C batteries. (Document Nos. 1 and 2.) Thus, Plaintiff contends that his AM/FM radio, night light, and beard trimmer will be rendered useless during his confinement at

FCI Beckley. (Id.) Prison administrators, however, have broad discretion in the management or correctional institutions. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Unless other constitutionally protected rights are involved, prisons may constitutionally disallow the possession of personal property. See Rosson v. Weatherholtz, 405 F.Supp. 48 (W.D.Va. 1975); Abbott v. McCotter, 13 F.3d 1439 (10th Cir. 1994). There is nothing *per se* unconstitutional in prisons disallowing the possession of certain items.

Courts, however, deem inmates' claims respecting prison officials' intentional deprivation of their property cognizable under Bivens to the extent that due process rights are implicated. In the instant case, however, there is no allegation that Defendant has actually taken or deprived Plaintiff of his personal property. (Document Nos. 1 and 2.) Plaintiff merely complains that his personal property will be rendered useless without AA, AAA, or C batteries and he will be required to purchase new items that "do not require batteries or require only a watch type battery." Further, even assuming Defendant has actually taken or deprived Plaintiff of his personal property, the undersigned finds that the circumstances do not implicate a violation of Plaintiff's constitutional rights. Plaintiff has meaningful post-deprivation remedies through the BOP's Administrative Remedies Program. See Manning v. Booth, 2005 WL 1200122, *2 (D.Md. May 20, 2005)("In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy."); Bigbee v. United States, 359 F.Supp.2d 806 (W.D. Wis. 2005); cf. Laury v. Greenfield, 87 F.Supp.2d 1210, 1214 - 1215 (D.Kan. 2000), quoting Burton-Bey v. United States, 100 F.3d 967, 1996 WL 654457 (10th Cir.(Kan.))(Defendants negligent or intentional deprivation of plaintiff's property does not violate due process if there is a meaningful post-deprivation remedy for the loss.) Accordingly, to

the extent Plaintiff's is asserting a <u>Bivens</u> claim, such should be dismissed.

**3.      Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction:**

In his Complaint/Motion, Plaintiff requests "a combined temporary restraining order and a preliminary injunction to ensure that batteries necessary for the normal operation of all AM/FM radios, night lights, clocks, and beard trimmers are not eliminated, removed or discontinued from being sold to inmates incarcerated at [FCI Beckley]." (Document No. 1.) Plaintiff states that an AM/FM radio is "an indispensable item and essential for viewing various television programs, watching and listening to local and world news, sporting events, and weather predications." (<u>Id.</u>) Plaintiff complains that he, and other inmates, will be irreparably harmed because inmates will be required to expend "sorely needed funds" for the purchase of a new wind-up AM/FM radio instead of using those funds for the purchase of stamps "to maintain close and personal relationship with immediate family members, relative, loved ones, the court, and to purchase personal hygiene items." (<u>Id.</u>)

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in <u>Hoechst Diafoil</u>

Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." The Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[3] The Fourth Circuit has explains that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." Id. Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary

---

[3] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit,

14

restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer, 2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

For the reasons fully explained above, the undersigned has recommended that Plaintiff's Complaint/Motion be dismissed for failure to state a cognizable claim. Accordingly, the undersigned finds that Plaintiff's request for a temporary restraining order and injunctive relief should be denied as he cannot establish that he is likely to succeed on the merits.

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court the District Court **DISMISS** Plaintiff's Complaint/Motion (Document No.

---

however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

1), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: June 11, 2019.

Omar J. Aboulhosn
United States Magistrate Judge